**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Timothy R. Osborn,  Case No. 3:04CV7486

    Plaintiff

v.  ORDER

Knights of Columbus, et al.,

    Defendants

This is a multi-count case brought by plaintiff Timothy R. Osborn against the Knights of Columbus, Knights of Columbus as Administrator of the Knights of Columbus Agents Pension Plan, and Knights of Columbus as the Administrator of the Knights of Columbus Employee Health Benefit Plan (collectively "KofC").

Plaintiff originally filed a nine-count complaint. Previously, I dismissed five of plaintiff's counts pursuant to Fed. R. Civ. P. 12(b)(6). Defendants have moved for summary judgment on the remaining four counts: breach of contract, defamation, ERISA violations, and COBRA violations. Plaintiff has moved for summary judgment on his ERISA claim.

Plaintiff has also filed three additional motions: two motions to strike deposition testimony offered by defendants for purposes of their summary judgment motion and a motion to file a supplemental affidavit.[1]

For the following reasons, I shall grant plaintiff's motion for summary judgment. Defendants' motion for summary judgment shall be granted in part and denied in part. No ruling will be made on plaintiff's other three motions, as such ruling would not affect the outcome of the pending motions for summary judgment.

## Background

Defendants are a fraternal benefit society, organized as a non-profit corporation in Connecticut. Defendants sell insurance through field agents to their members and their families within assigned territories.

On May 1, 1999, plaintiff Osborn and KofC signed a contract authorizing Osborn to solicit and procure insurance applications from assigned members of KofC. The contract entitled Osborn to commissions which vested after five consecutive years of service, based on the premium payments procured from KofC members who purchased insurance from Osborn.

The contract included a covenant restricting field agents, like plaintiff, from attempting to solicit insurance applications from another insurer within one year after termination of the contract. The contract also contained a provision reflecting the parties' choice of Connecticut law to govern and interpret the agreement.

---

[1] I will reserve judgment on these three motions pending trial. It is not necessary to address and adjudicate these motions now because, even if adjudicated against plaintiff, I would reach the same conclusions discussed below as there are still genuine issues of material fact.

On August 31, 2003, Osborn resigned as field agent for KofC. Osborn claims that KofC thereafter implemented a scheme to deprive him of commissions he had earned under the contract. Osborn further contends that KofC misrepresented facts to persuade members to cancel policies purchased from Osborn.

## Discussion

### 1. Summary Judgment: ERISA

Both parties move for summary judgment on plaintiff's ERISA claim.

Osborn was a ten-year employee of KofC. In mid to late July, he was told that his employment with KofC would be terminated effective August 31, 2003, unless he resigned prior to that time.

On August 2, 2003, Osborn sent a letter to KofC seeking information related to his retirement benefits and asking for "a copy of any plan description, statement of accrued benefits, summary plan description or other documents describing the benefits available" to him. Osborn requested these documents at least four more times from KofC.

Despite his repeated requests, Osborn did not receive a copy of the summary plan description until February 12, 2004. He has never been provided a copy of the plan documents.

Section 1024(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), requires that a plan administrator "upon written request of any participant or beneficiary [to] furnish a copy of the latest updated summary plan description" and any other documents or "instruments under which the plan is established or operated." Any administrator who "fails or refuses to comply with the request for information" within thirty days of a request

3

may be "personally liable to such participant or beneficiary in the amount of up to $100.00 per day from the date of such failure or refusal" to furnish the requested information. 29 U.S.C. § 1132(c)(1).[2]

Defendants claim that plaintiff's ERISA claim should fail because: 1) the claim was not received by the plan administrator; or 2) plaintiff has not suffered any prejudice due to defendants' failure to provide plaintiff with the proper documentation.

In the Sixth Circuit, only a plan administrator can be held liable under § 1132(c)(1) for ERISA violations. *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001) (quoting *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992)).

Defendants point to the fact that plaintiff sent his request for documents to KofC headquarters in Connecticut as evidence that plaintiff did not contact the plan administrator. The evidence shows, however, that defendants, in a letter to plaintiff dated September 10, 2003, indicated that the plan administrator was simply KofC at its headquarters in Connecticut. It is undisputed, moreover, that defendants' general counsel received the requests, which were forwarded to the proper department.

I find that there is no genuine dispute of material fact about plaintiff's requests. I conclude, as a matter of law, that plaintiff, by sending his requests to KofC headquarters, which KofC had specified as the plan administator, properly contacted the plan administrator for the documents to which the statute entitled him.

---

[2] Plaintiff insists that "[t]he most recent amendments to 29 U.S.C. § 1132(c)(1) have raised the penalty to $110.00 per day." After searching both LEXIS (current through August 2, 2005) and Westlaw (current through January 1, 2005), however, I have found no evidence that ERISA has been so amended. Therefore, absent further evidence from plaintiff, I will proceed under the assumption that the proper statutory penalty is not to exceed $100.00 per day.

To the extent there may have been some confusion about how or where to contact the plan administrator, the fault lies with the defendants, not the plaintiff. If KofC headquarters is actually not the proper plan administrator, plaintiff should not be prejudiced for following defendants' directions; defendants are in a better position than plaintiff to know who, actually, is the plan administrator.

Defendants also seek summary judgment because plaintiff was not prejudiced by defendants' failure to furnish the proper documents. Defendants cite multiple cases, none of which are binding on this court, in support of this contention.[3] In this circuit, however, the purpose of § 1132(c)(1) is to punish plan administrators who fail to comply with requests for documents which ERISA requires them to provide. *Bartling v. Freuhauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).

Nonetheless, plaintiff has not, at this point, made a motion for an assessment of penalties. Plaintiff has only made a motion for a judicial determination that KofC violated § 1024(b)(4). I conclude that KofC did not provide the requested documents within the thirty days required by statute. Therefore, summary judgment is proper for plaintiff on this issue.

---

[3] Defendants cite: *Lee v. Dayton Power and Light Co.*, 604 F. Supp. 987 (S.D. Ohio 1985); *Adams v. Western Conference of Teamsters Pension Plan*, 484 F. Supp. 933 (D. Utah 1979); *Pollack v. Castrovinci*, 476 F. Supp. 606 (S.D.N.Y. 1979); *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227 (S.D.N.Y. 1989). None of these cases are binding authority on this court.

5

## 2. Defendants' Motion for Summary Judgment:
## Breach of Contract and Punitive Damages

The crux of Osborn's breach of contract claim against KofC is that he is still owed money under his contract. KofC cites to testimony of multiple parties to show that Osborn's claim is spurious and that he has received all compensation due to him.[4]

Osborn responds by citing testimony that indicates: some money owed to him was fully vested; he was not paid commissions at the contracted for rate; and his level of indebtedness to KofC is not in the amount that KofC calculates.[5]

There are genuine disputes of material fact as to whether the contract between Osborn and KofC was breached by non-payment by KofC and if KofC owes Osborn any compensation.

Turning to whether Osborn's claim for punitive damages may survive summary judgment, all parties agree that the relevant law in this matter is that of Connecticut. *See also Osborn v. Knights of Columbus*, 2005 WL 469602, *2 (N.D. Ohio March 1, 2005).

---

[4] KofC attempts to rely on Osborn's testimony in which he testifies that he does not know what specific provisions of the contract were breached to indicate that KofC should prevail at the summary judgment stage. Osborn is not an attorney, however, and it is irrelevant to the factual battleground I must march through at the summary judgment stage that Osborn himself could not point to the specific provisions in the contract he felt were violated. In fact, Osborn testified that his attorneys had determined that the contract was breached.

[5] Osborn also seeks to strike portions of Barbara Muzio's deposition where she testified as to the rate of commissions Osborn was owed and to the level of indebtedness because, Osborn claims, Ms. Muzio's testimony is not compliant with Civil Rule 56(e). I need not reach the conclusion that plaintiff seeks, however, because, even looking at Ms. Muzio's testimony, admissible or not, defendants cannot prevail in their motion for summary judgment as discussed *infra*.

Under Connecticut law, courts rarely award punitive damages for breach of contract. *Barry v. Posi-Seal Int'l, Inc.*, 40 Conn.App. 577, 672 A.2d 514, 519 (Conn.App.Ct.1996). "This is so," the court stated in *Barry,* "because punitive damages are assessed by way of punishment, and the motivating basis does not usually arise as a result of the ordinary private contract relationship." *Id.* at 519 (citing *L.F. Pace & Sons, Inc. v. Travelers Indemnity Co.*, 9 Conn.App. 30, 514 A.2d 766, 775 (Conn.App.Ct.1986)).

Punitive damages, however, are available in a breach of contract action if a plaintiff alleges and proves tortuous conduct that is malicious, willful, or reckless. *Id.*; *see also Triangle Sheet Metal Works, Inc. v. Silver*, 154 Conn. 116, 222 A.2d 220, 225 (Conn.App.Ct.1966). The underlying tortuous conduct can be express or implied. *L.F. Pace & Sons, Inc.*, 514 A.2d at 775. Conclusory allegations of purposeful, wanton, and willful acts, without supporting allegations, are not, however, an adequate basis for recovering punitive damages for breach of contract. *Precision Computer Servs., Inc. v. McIlmurray*, 2002 WL 318256, at *3 (Conn.Super.Ct. Dec.12, 2001).

Only in ¶ 6 of the complaint is their an indication of the nature of KofC's allegedly tortuous conduct while breaching the contract: namely, that certain documents relating to the contract were forged. Osborn, however, has not presented any evidence that these alleged forgeries were in any way linked to his breach of contract claim.

Osborn thus fails to point to any specific evidence of tortuous conduct relating specifically to the contract. Instead, he relies on the totality of the circumstances surrounding the alleged contractual breach, insisting that "a reasonable person would cry 'outrageous' if s/he knew the circumstances surrounding" KofC's treatment of its contractual obligations.

7

Outrageousness is not the relevant legal standard. The standard is whether the defendants allegedly tortuous conduct relating to the contract was malicious, reckless or willful. Aside from the allegation of forged documents, which have not been shown to have a connection with the contractual breach, plaintiff has provided no evidence about KofC's actions relating to the contract, or indicate how such actions were malicious, reckless, or willful. Plaintiff has the burden of producing evidence to refute defendants' factual assertions; he has not done so. Without such evidence, plaintiff cannot prevail on his punitive damages claim.

Therefore, while summary judgment is not proper with regard to the allegations of contractual breach, Connecticut law, applied to plaintiff's factual allegations, forecloses a punitive damage charge.

### 3. Defendants' Motion for Summary Judgment: Defamation

Osborn has alleged that KofC has engaged in both written and verbal defamation against him.

All parties agree that Ohio law applies to this claim. To prevail in a defamation action, a plaintiff must prove: "1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Defiance Hosp., Inc. v. Fauster-Cameron, Inc.*, 344 F. Supp. 2d 1097, 1119 (N.D. Ohio 2004) (quoting *Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 855 (N.D. Ohio 2003) (citing *Akron-Canton Waste Oil, Inc., v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App. 3d 591, 601 (1992)).

Defendants claim that none of the statements attributed to KofC are actionable. Defendants claim that all statements made by them in writing or orally regarding Osborn are covered by a qualified privilege pursuant to *Hahn v. Kotten*, 43 Ohio St. 2d 237, 243 (1975). Plaintiff does not refute this assertion; he

8

turns his attention, rather, to showing the statements were made with actual malice.[6] *See Smith v. Ameriflora 1992, Inc.*, 96 Ohio App. 3d 179, 185 (1994) (if the statements are untrue and made with actual malice, then a defendant's claim of qualified immunity is defeated). Plaintiff has the burden of showing actual malice. *Evely v. Carlon Co., Div. Of Indiana Head, Inc.*, 4 Ohio St. 3d 163, 165 (1983).

I first turn to the issue of written statements published by KofC. Plaintiff claims three written statements were defamatory: 1) a statement in a letter dated September 23, 2003 to "Grand Knights and Members of Councils. . . ." that Osborn "has decided to leave the agency and pursue other interests and no longer may represent the Order in any agency capacity" and "[a]ll these changes are also allowing the agency to hire in some new agents to bring the agency to full manning for the first time in anyone's memory and I'm sure you'll welcome the much higher level of service that this will bring your area than what was possible in past years."; 2) a statement in the "Remarks" section of a policy change form instructing the home office to "[r]eissue with annual premium of $1500, not SA (semi-annual) $1500. Policy was oversold and just delivered. Client has requested $1500 annually, not SQ or Qtr. Selling FA. . . is being terminated"; and 3) a chart presented to Rosemary Johnson, a policyholder, showing loans totaling $42,797.35 on one of her policies.

The first statement arguably impliedly defames Osborn by first mentioning that he no longer represented KofC and then indicating that customer service would be much higher than it had been (the

---

[6] By not refuting defendants' assertion that communications, but for malice, were covered by qualified immunity, plaintiff has waived any right to assert such at a later date. In his response to defendants' motion, plaintiff only claims that defendants' "numerous written and oral statements negate the application of a qualified privilege and are proof of actual malice." I note that, if accurately applied in this case, *Hahn* does provide a basis for defendants to assert their communications were privileged, absent malice.

9

implication being that Osborn had provided bad customer service). But "Ohio does not recognize libel through implied statements." *Krems v. Univ. Hosps. Of Cleveland*, 133 Ohio App. 3d 6, 12 (1999) (citing *Ashcroft v. Mount Sinai Med. Ctr.*, 68 Ohio App. 3d 359 (1990)). Because absent implication, the statement itself is not libelous, plaintiff's defamation claim on the first statement is not actionable and is properly subject to dismissal.

The second statement, that Osborn oversold policies is explicit, rather than implied. Plaintiff has presented enough evidence to enable a jury to find that this statement was false. Further, a jury could determine, based on the totality of the evidence presented, that the statement was made with malice. Therefore, whether the statement was untrue, and if untrue, was made maliciously, is a question of fact for a jury. Plaintiff's defamation claim on the second statement is actionable and not subject to summary judgment.

I need not to reach the issue of whether the third statement implicates the implied statement doctrine. The statement was shown to Ms. Johnson by her new insurance agent to show that loans were improperly taken out on her insurance policy. Her affidavit, however, says that her new insurance agent, in showing the document to her, said "Osborn *may* have taken out the loans without [your] knowledge." (Emphasis added). This statement does not provide a sufficient factual basis to show that the statement was made falsely. The statement is much different than if the new agent had told Ms. Johnson that Osborn *had* taken out loans without permission while showing her the document. The agent's statement was merely of a possibility. Therefore, plaintiff's defamation claim on the third statement is not actionable and is subject to summary judgment.

10

Turning to the claim for verbal defamation, I first address statements allegedly made on behalf of KofC to Osborn's next employer, Northwestern Mutual Life Insurance Company (Northwestern). In his complaint, Osborn claims that these defamatory statements caused his termination from Northwestern.

In their motion, defendants provide evidence that nobody from KofC ever spoke to Northwestern about Osborn. Plaintiff, in his reply, does not provide any evidence to support his allegation that such contacts occurred. Rule 56 requires that a non-moving party may not rest on his complaint, but must come forward with evidence to support his claim. As plaintiff has not met his burden under Rule 56, summary judgment is properly entered in favor of defendants on plaintiff's verbal defamation claim relating to alleged communications from KofC to Northwestern.

Plaintiff also claims that KofC verbally defamed him to his former customers. Defendants, in their brief, insist that plaintiff does not have any evidence to support this claim other than his own deposition testimony. In his response, plaintiff points to multiple affidavits that indicate that defendants made false statements about plaintiff to his former customers. Further, there is sufficient evidence that a jury could come to the conclusion that the statements were made maliciously. Defendants did not file a reply to plaintiff's brief. As the only admissible evidence before me on this issue is provided by plaintiff, summary judgment is not proper for defendants on plaintiff's claim of oral defamation to his former customers.

### 4. Defendants' Motion for Summary Judgment: COBRA

Federal law requires a Pension Plan Administrator to provide notice and furnish certain requested information from a plan participant within thirty days or face a statutory penalty of up to $100 per day for

every day the information is not furnished. 29 U.S.C. § 1024(b)(4) (administrator must furnish certain information); 29 U.S.C. § 1132(c)(1)(B) (statutory penalty of up to $100[7] per day).

KofC claims that they complied with all provisions of COBRA. KofC further claims that, if they did not comply with COBRA, Osborn was not prejudiced and, therefore, should not recover any damages. Osborn claims that he did not receive proper notice and was prejudiced by KofC's alleged failure to comply with COBRA. Both sides support their contentions with admissible evidence.

There are genuine issues of material fact as to Osborn's COBRA claim. Therefore, summary judgment is properly denied to defendants.

## Conclusion

In light of the foregoing it is hereby ORDERED THAT

1. Plaintiff's motion for summary judgment as to his ERISA claim be, and the same hereby is granted;

2. Defendants' motion for summary judgment on plaintiff's breach of contract claim be, and the same hereby is denied;

3. Defendants' motion for summary judgment on plaintiff's punitive damages claim as to breach of contract be, and the same hereby is, granted;

4. Defendants' motion for summary judgment on plaintiff's written defamation claim relating to the first statement discussed *supra* be, and the same hereby is granted;

---

[7] Plaintiff and defendants claim that the statutory penalty for a COBRA violation is up to $110 per day. As with the statutory penalty for an ERISA violation discussed *supra*, I could not find any evidence that penalty is more than $100 per day.

5. Defendants' motion for summary judgment on plaintiff's written defamation claim relating to the second statement discussed *supra* be, and the same hereby is denied;

6. Defendants' motion for summary judgment on plaintiff's written defamation claim relating to the third statement discussed *supra* be, and the same hereby is granted;

7. Defendants' motion for summary judgment on plaintiff's oral defamation claim relating to communications made to Northwestern mutual be, and the same hereby is granted;

8. Defendants' motion for summary judgment on plaintiff's oral defamation claim relating to communications made to defendants' former customers be, and the same hereby is denied;

9. Defendants' motion for summary judgment on plaintiff's ERISA claim be, and the same hereby is denied;

10. Defendants' motion for summary judgment on plaintiff's COBRA claim be, and the same hereby is denied.

So Ordered.

/s/James G. Carr
James G. Carr
Chief Judge